1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION**

CALIXTO GARCIA,                      )        No. CV 04-07771 (SH)
                                     )
              Plaintiff,             )        MEMORANDUM OPINION
                                     )        AND ORDER
       v.                            )
                                     )
JOANNE B. BARNHART,                  )
Commissioner of Social Security,     )
                                     )
              Defendant.             )
_____)

     This matter is before the Court for review of the decision by the Commissioner of
Social Security denying plaintiff's application for Disability Insurance Benefits under
Sections 216(I) and 223 of the Social Security Act.  Pursuant to 28 U.S.C. § 636(c), the
parties have consented that the case may be handled by the undersigned.  The action
arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the
pleadings and transcript of the record before the Commissioner.  The plaintiff and the
defendant have filed their pleadings, the defendant has filed the certified transcript of
record, and the parties have filed a joint stipulation.  After reviewing the matter, the Court
concludes that the decision of the Commissioner should be reversed and remanded.

     On February 20, 2002, plaintiff Calixto Garcia filed an application for a period of
disability or Disability Insurance Benefits alleging an inability to work since December

26, 2000, due to multiple injuries resulting from a car accident.  (Administrative Record ["AR"] 49-52).  On May 5, 2003, an Administrative Law Judge ("ALJ") determined that plaintiff was not disabled within the meaning of the Social Security Act.  (AR 16-21).

Plaintiff makes five challenges to the ALJ's determination.  Plaintiff alleges that the ALJ erred (1) in developing the record by failing to call a medical advisor to determine whether the claimant's impairments meet or equal Listing 1.02(A); (2) in posing hypotheticals to the vocational expert that do not accurately reflect plaintiff's residual functional capacity; (3) in finding that one job with 380 jobs in the local economy represents a significant number of jobs; (4) in failing to assess plaintiff's subjective symptoms and credibility; and (5) in failing to consider new and material evidence which was not admitted at the time of the initial hearing, but before the second, supplemental hearing.

For the reasons discussed below, the Court finds that plaintiff's first and second claims of error do not have merit, and that plaintiff's third claim of error does have merit. Since the matter is remanded based on plaintiff's third claim of error, the Court will not address plaintiff's fourth and fifth claims of error.

**ISSUE NO. 1:**

Plaintiff asserts that the ALJ erred in developing the record by failing to call a medical advisor to determine whether the claimant's impairments meet or equal Listing 1.02(A).  Defendant argues that the ALJ properly assessed plaintiff's residual functional capacity and that further development of the record is within the discretion of the ALJ. Defendant further argues that plaintiff is trying to improperly shift the burden of proof to the ALJ.  In response, plaintiff argues that there is no clear indication that Listing 1.02(A) was considered in the evaluation process.

The ALJ has an independent "'duty to fully and fairly develop the record to assure that the claimant's interests are considered.'"  Smolen v. Chater, 80 F.3d 1273, 1288 (9th

Cir. 1996)(quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).  The ALJ has broad latitude in deciding whether to order a consultative examination.  Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001).  Where the ALJ cannot properly evaluate the medical evidence, the ALJ may be assisted by a medical consultant.  See Armstrong v. Commissioner, 160 F.3d 587, 589-90 (9th Cir. 2001)("If the 'medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination.'"); 20 C.F.R. § 404.1527(c)(3).  "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'"  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)(quoting Smolen, supra and Amstrong, supra).  "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record."  Tonapetyan, supra (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999) and Smolen, supra).

Listing 1.02(A) requires "[m]ajor dysfunction of a joint(s) (due to any cause): [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)[,] [w]ith: [i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b."  20 C.F.R. § 404, Subpart P, Appendix 1, Listing of Impairments 1.02(A).

Listing 1.00B2b defines three terms: (1) "inability to ambulate effectively," (2) "ineffective ambulation," and (3) "ambulate effectively."

First, "inability to ambulate effectively" means "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities."  Second, the general definition of "ineffective ambulation" is "having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."[1]  Third, to "ambulate effectively" means "individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school."  20 C.F.R. § 404, Subpart P, Appendix 1, Listing of Impairments 1.00B2b(1).

Listing 1.00B2b(2) provides examples of "ineffective ambulation," which "include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." Id.

In the present case, on April 17, 2001( about four months after plaintiff's onset date), a treating orthopedic physician recommended treatment to "wean from moon boot

---

[1] 1.00J(4) refers to hand-held assistive devices: "When an individual with an impairment involving a lower extremity or extremities uses a hand-held assistive device, such as a cane, crutch or walker, examination should be with and without the use of the assistive device unless contraindicated by the medical judgment of a physician who has treated or examined the individual. The individual's ability to ambulate with and without the device provides information as to whether, or the extent to which, the individual is able to ambulate without assistance. The medical basis for the use of any assistive device (e.g., instability, weakness) should be documented.  The requirement to use a hand-held assistive device may also impact on the individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." 20 C.F.R. § 404, Subpart P, Appendix 1, Listing of Impairments 1.00J(4).

completely." (AR 143).  No mention was made of crutches or other hand-held assistive devices, and there is nothing in the record indicating that the moon boot in any way "limits the functioning of both upper extremities" to constitute "ineffective ambulation." The June 27, 2001 discharge summary stated that plaintiff "should use crutches as needed." (AR 136).  On August 29, 2001, plaintiff had an operation to remove metal in his right tibia. (AR 122).  The September 2, 2001 discharge summary stated that plaintiff is "toe touch weight bearing with a Moon boot."  Again, no mention was made of crutches or other hand-held assistive devices, and there is nothing in the record indicating that the moon boot in any way "limits the functioning of both upper extremities" to constitute "ineffective ambulation."  Plaintiff later was evaluated by Dr. Colette Flores, a reviewing state agency physician.  In a June 4, 2002 report (a "Physical Residual Functional Capacity Assessment"), Dr. Flores indicated "Listings to be considered: 1.02, 1.03, 1.06, 1/07, 1.08." (AR 194).  After noting plaintiff's exertional limitations (i.e., occasional lifting and/or carrying of 20 pounds; frequent lifting and/or carrying of 10 pounds; standing and/or walking for at least 2 hours in an 8-hour workday; sitting about 6 hours in an 8-hour workday; and unlimited pushing and/or pulling) and the absence of any postural, manipulative, visual, communicative and environmental limitations, Dr. Flores found that plaintiff was not disabled. (AR 187-194).  Dr. Flores specifically noted that "[plaintiff] can now walk unassisted although he may get tired after prolonged (sic) walking." (AR 192, 194).  Dr. Flores' conclusion was consistent with the opinions of Dr. Frederick Workman, a consultative orthopedic examiner. (AR 178-84).  On May 7, 2002, following an evaluation of plaintiff, Dr. Workman opined that plaintiff "is capable of lifting 20 lbs occasionally and 10 lbs frequently"; that plaintiff "can stand and walk for no more than 2 to 4 hours in an 8-hour workday with adequate rest periods"; that plaintiff "can sit for 6 hours in an 8-hour workday with normal rest periods"; and that plaintiff "will have problems with repetitive squatting, climbing stairs and kneeling but could do these on an occasional basis." (AR 184).

In its evaluation of the evidence, the ALJ noted that "Medical evidence included in the record shows that the claimant has post-traumatic arthritis of the right ankle (Exhibit 2F/6, 6F/1)." (AR 17 [citing the May 7, 2002 report of Dr. Workman (AR 183) and the November 11, 2002 report of Dr. William Buchanan, plaintiff's treating orthopedic physician (AR 211)]). The ALJ further noted that "This impairment is severe, imposing more than a minimal effect on his ability to perform work related activities." (AR 17). Nonetheless, the ALJ concluded that "this evidence does not show that the claimant has an impairment or combination of impairments that meet or equal the level of severity of any impairment listed in Appendix 1, Subpart P, Regulations No. 4." (AR 17).

While the ALJ did not specifically cite to Listing 1.02(A), it is clear that the ALJ considered whether the impairment or combination of impairments met or equaled Listing 1.02(A). The medical evidence before the ALJ contained Dr. Flores' express consideration and dismissal of Listing 1.02(A). Therefore, the ALJ did not err in failing to call a medical advisor to determine whether plaintiff's impairments met or equaled Listing 1.02(A).

**ISSUE NO. 2**

Plaintiff asserts that in assessing plaintiff's residual functional capacity the ALJ erred in failing to consider plaintiff's impairment, specifically, manipulative limitations caused by pain in plaintiff's right wrist (as reported by plaintiff's treating physician, Dr. Buchanan). Plaintiff argues that the hypothetical propounded to the vocational expert failed to include the right wrist impairment identified by Dr. Buchanan. Plaintiff further argues that the hypothetical propounded to the vocational expert was vague because the ALJ [who found that plaintiff should be allowed to "position his right leg raised on a chair" (AR 18, 20)] failed to indicate how high the right leg must be elevated. Defendant responds that the ALJ was not obligated to accept the conclusions of plaintiff's treating physician (but rather could accept the conclusions of the consultative physician); that the

ALJ's hypothetical to the vocational expert properly excluded the right wrist limitation; and that the ALJ's hypothetical to the vocational expert as to the level of elevation required for plaintiff's right leg was not vague.  In response, plaintiff argues that the ALJ failed to consider and address the opinions of plaintiff's treating physician (as contained in a June 23, 2002 letter).

A treating physician's opinion is entitled to greater weight than that of an examining physician.  Magallanes v. Bowen, supra, 881 F.2d 747, 751 (1989); 20 C.F.R. § 416.927(d)(1).  "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes, supra (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 n.7 (9th Cir. 1989)).  The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See  20 C.F.R. § 416.927(b)-(d).  "The [Commissioner] may disregard the treating physician's opinion whether or not that opinion is contradicted."  Magallanes, supra (citing Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)).  "To reject the opinion of a treating physician which conflicts with that of an examining physician, the ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  Magallanes, supra (citation and quotation marks omitted).

Here, in a letter dated June 23, 2002, plaintiff's treating physician (Dr. Buchanan) opined as follows: "Due to the chronic pain in his right leg and ankle areas, I believe [plaintiff] will not be able to perform any type of work requiring excessive ambulation, climbing, jumping or running.  He also, due to the pain in the [right] wrist, may have difficulty performing repetitive activities using the right upper extremity.  I believe these restrictions should be considered permanent and stationary."  (AR 98).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Nonetheless, after "[c]onsidering the overall record and testimony offered at the hearing" and "incorporating the opinions of the claimant's treating and examining physicians" (AR 18), the ALJ made the following findings:

> "The claimant has the following residual functional capacity: to lift and carry no more than twenty pounds occasionally and ten pounds frequently. His ability to perform the full range of light work is reduced by his inability to stand and walk for no more than two hours in an eight-hour workday. Even to accomplish this, the claimant should be allowed to alternate seated and standing positions and position his right leg raised on a chair. He can sit for no more than six hours in an eight-hour workday. The claimant's ability to perform work-related activities is also impacted by his need to avoid more than occasional climbing of stairs, squatting or kneeling. The claimant is also limited in the vast world of work as a result of his language barrier. He is Spanish speaking, only." (AR 20; see also AR 18).

While the ALJ did not expressly address plaintiff's treating physician's opinion concerning plaintiff's manipulative limitation, the ALJ clearly considered and rejected the opinion of plaintiff's treating physician. (See AR 18-21). Indeed, plaintiff's treating physician's opinion was discussed at the initial hearing in February 2003. (See AR 253). The ALJ implicitly found more credible the opinions of the consultative physician (Dr. Workman) as well as the opinions of the reviewing physician (Dr. Flores), neither of whom found any impairment resulting from plaintiff's right wrist injury (AR 183, 190, 192, 194). Dr. Workman's opinions constituted substantial evidence in support of the ALJ's findings about plaintiff's residual functioning capacity. See Morgan v. Commissioner, 169 F.3d 595, 600 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)(Where "the opinion of a treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from

those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict."); Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Dr. Flores' opinions, which were consistent with Dr. Workman's opinions, also constituted substantial evidence in support of the ALJ's findings about plaintiff's residual functioning capacity.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996)("[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings."); 20 C.F.R. § 404.1513(c).

Since the ALJ properly found that plaintiff did not have any manipulative limitations, the ALJ was not obligated to pose a hypothetical question to the vocational expert setting out that limitation.  See Magallanes, supra, 881 F.2d at 756-77;

Finally, contrary to plaintiff's assertion, the ALJ's hypothetical question to the vocational expert was not vague as to the level of elevation of petitioner's right leg.  The ALJ's question asked the vocational expert to assume that a hypothetical person, when sitting, was required to have his leg elevated on a chair or other device to the hip level. (See AR 238).  The hypothetical question was consistent with the February 7, 2003 statement of Dr. Christine Phan concerning management of plaintiff's pain: ". . . [Plaintiff] has difficulty sitting or standing for long periods of time.  Please allow [plaintiff] to be able to change position and rest his leg on a chair, as this eliminates his back pain and limb pain."  (AR 212).

**ISSUE NO. 3**

Plaintiff asserts that the ALJ erred in finding that one job with 380 jobs in the local economy represents a significant number of jobs.  Defendant argues that substantial evidence supports the ALJ's finding that there were a significant number of jobs in the national economy that plaintiff could perform.

If a claimant's impairment or combination of impairments do not meet or equal a listed impairment, and if a claimant cannot perform past relevant work, the burden shifts to the Commissioner to show that the person has the residual functional capacity to perform other kinds of work in the national economy.  Bowen v. Yuckert, 482 U.S. 137, 141-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); Magallanes, supra, 881 F.2d at 756 Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988); 20 C.F.R. §§ 404.1545, 404.1520(e), 416.920(e).  "The Commissioner must 'identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite [his] identified limitations.'"  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999)(quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir.1995); see also Magallanes, supra ("The Secretary must show that the claimant can perform other types of substantial, gainful work that exists in the national economy; specific reference should be made to realistic job opportunities."); Hall v. Secretary of Health, Educ. & Welfare, 602 F.2d 1372, 1377 (9th Cir. 1977)("[I]t is incumbent on the Commissioner at a minimum, to come forward with specific findings showing that the claimant has the physical and mental capacity to perform specified jobs, taking into consideration the requirements of the job as well as the claimant's age, education, and background.").

"Work which exists in the national economy" is defined as "work which exists in significant numbers either in the region where [plaintiff] lives or in several regions of the country."  42 U.S.C. § 423(d)(2)(A); see also 20 C.F.R. § 416.960(c).  "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [plaintiff is] able to meet with [plaintiff's] physical or mental abilities and vocational qualifications.  Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where plaintiff live[s] are not considered 'work which exists in the national economy.'"  20 C.F.R. § 404.1566(b).  "[W]hether there are a significant number of jobs a claimant is able to

perform with his limitations is a question of fact to be determined by a judicial officer."
Martinez v. Heckler, 807 F.2d 771, 775 (9th Cir. 1986).

At a hearing on April 4, 2003, the vocational expert testified that a hypothetical person with plaintiff's limitations (i.e., the need for a sit/stand option, the need to elevate his leg when sitting) could perform the job of order clerk; that there were approximately 46,000 order clerk jobs nationally and 3,800 order clerk jobs locally (i.e., Los Angeles County); and that, after eroding the job base for plaintiff's limitations and his inability to speak English, there were approximately 2,000 order clerk jobs nationally and 380 order clerk jobs locally. (AR 238-41). The ALJ found there were a significant number of jobs in the national and local economy that could be performed by plaintiff. (AR 19, 21)

The Ninth Circuit has not clearly established the minimum number of jobs necessary to constitute a "significant number." See Barker v. Secretary of Health and Human Services, 882 F.2d 1474, 1478 (9th Cir. 1989). Moreover, unlike other Circuits, the Ninth Circuit has not adopted a workable framework for determining whether an ALJ has properly found there was a "significant number" of jobs that could be performed in the national economy. See Barker, 882 F.2d at 1478-80 (finding that 1,266 jobs in the Los Angeles/Orange County area was a significant number, based on a comparison with decisions by other Circuit Courts and by district courts as to what constituted a significant number); compare Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988)(stating that the ALJ should consider among other things "the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; and the types and availability of such work); Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988)(same). The Court notes that the number of jobs found to be significant by the ALJ in plaintiff's case was substantially less than the number of jobs found to be significant by the Ninth Circuit in Barker. While a few courts have found that less than 380 jobs in the local area constituted a significant number, see e.g. Allen v.

Bowen, 816 F.2d 600, 602 (11th Cir. 1987)(finding that 174 small appliance repair jobs in the local area was a significant number); Green v. Chater, 1997 WL 797807, *4 (N.D. Cal. 1997)(finding that 350-400 security or identification-gate-guard jobs locally was a significant number); Uravitch v. Heckler, 1986 WL 83443 (D.Az. 1986)(finding that, even though 60-75% of 500-600 tune-up mechanic positions in the local area required experience plaintiff did not have, the remaining positions constituted a significant number), the Court is unable to make such a determination without knowing whether the ALJ's finding was based on his consideration of the following criteria in the context of plaintiff's case: the locations of order clerk jobs within the local economy (i.e., Los Angeles County) or the national economy; whether plaintiff is capable of traveling to those locations to engage in those jobs; the isolated nature of those jobs; and the availability of those jobs.

In the absence of any evidence that the ALJ considered the above criteria in the context of plaintiff's case, the Court is unable to determine whether the ALJ erred in finding that 380 order clerk jobs locally and 2,000 order clerk jobs nationally constituted a significant number of jobs.

### **ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings in accordance with the decision, pursuant to Sentence 4 of 42 U.S.C. § 405(g).  At the de novo hearing, the ALJ shall also re-assess plaintiff' credibility regarding alleged pain, as well as the Kaiser Permanente records submitted to the Appeals Council.

DATED: September 22, 2005

_____
/S/
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE